

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-14035-CANNON/MAYNARD

8 U.S.C. § 1324(a)(1)(A)(v)(I)
8 U.S.C. § 1324(a)(1)(A)(iii)
8 U.S.C. § 1324(b)(1)
18 U.S.C. § 982(a)(6)

UNITED STATES OF AMERICA

v.

MARTINEZ BUILDERS SUPPLY, LLC,
d/b/a EAST COAST TRUSS, a Florida
limited liability company,

Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. The defendant, **MARTINEZ BUILDERS SUPPLY, LLC, d/b/a EAST COAST TRUSS ("ECT")**, was a Florida limited liability company formed in 2010. **ECT** was engaged in the business of designing and constructing wood trusses for residential and commercial buildings. **ECT** was headquartered in Fort Pierce, Florida, and employed over one hundred workers, many of whom were manual laborers.

2. C.M., a person known to the Grand Jury, resided in Palm Beach County, within the Southern District of Florida, and was the president and managing member of **ECT**.

3. B.G., a person known to the Grand Jury, resided in Saint Lucie County, within the Southern District of Florida, and was an employee of **ECT**. B.G. was an office manager at **ECT** from in or about December 2020, through on or about August 6, 2021.

4. L.T., a person known to the Grand Jury, resided in Saint Lucie County, within the Southern District of Florida, and was an officer manager at **ECT** until in or about December 2020, when she left **ECT**.

5. Kelly Yanira Del Valle ("DEL VALLE"), resided in Saint Lucie County, within the Southern District of Florida.

6. Hollys Services LLC ("Hollys Services") was a Florida limited liability company formed in or about June 2018. Hollys Services was formed for the purpose of concealing, harboring, and shielding aliens who worked at **ECT** from detection by law enforcement. DEL VALLE was a member and manager of Hollys Services. DEL VALLE operated Hollys Services out of her residence in Saint Lucie County, Florida.

7. Quality Control LLC ("Quality Control") was a fictitious name created by DEL VALLE in or about April 2019. Quality Control was created for the same purpose as Hollys Services, that is, to conceal, harbor, and shield aliens who worked at **ECT** from detection by law enforcement. DEL VALLE operated Quality Control out of her residence in Saint Lucie County, Florida.

8. Homeland Security Investigations ("HSI") was and is an investigative arm of the Department of Homeland Security, which is within the executive branch of the Government of the United States. HSI is responsible for investigating certain immigration crimes, including the employment of aliens who are not authorized to work in the United States.

## HOMELAND SECURITY INVESTIGATIONS AUDIT

9. On or about March 12, 2018, HSI served **ECT** with a Notice of Inspection. A Notice of Inspection is the procedure by which HSI initiates an audit of a business' employment records.

10. HSI requested **ECT** to produce Form I-9s for all of its employees. Form I-9 is used for verifying the identity and employment authorization of individuals hired for employment in the United States. All United States employers must ensure proper completion of Form I-9 for each individual they hire for employment in the United States.

11. On or about March 16, 2018, **ECT**, through L.T., provided HSI with Form I-9s for approximately 150 employees in response to the Notice of Inspection.

12. On or about May 25, 2018, based on a review of the Form I-9s that **ECT** provided, HSI identified 43 **ECT** employees who appeared to be aliens not authorized to work in the United States. HSI provided **ECT** with a list of the 43 employees, and warned **ECT** it could be subject to criminal charges if it continued to employ these aliens.

13. C.M., L.T., and B.G. were all aware of the results of HSI's audit.

14. On or about June 15, 2018, **ECT**, through L.T., notified HSI that 36 of the 43 **ECT** employees identified by HSI had been terminated. **ECT** provided verification that 4 of the **ECT** employees identified by HSI were lawfully permitted to work in the United States.

### COUNT 1
**Conspiracy to Conceal or Harbor Aliens**
**(8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I))**

15. Paragraphs 1 through 14 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

16.	From in or about June 2018, continuing through on or about August 6, 2021, in Saint Lucie County, in the Southern District of Florida, the defendant,

**MARTINEZ BUILDERS SUPPLY, LLC, d/b/a EAST COAST TRUSS ("ECT"),**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, including Kelly Yanira DEL VALLE, to commit an offense against the United States, that is, to conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection, in any place, including any building and any means of transportation, aliens who entered and remained in the United States in violation of law, knowing and in reckless disregard of the fact such aliens entered and remained in the United States unlawfully, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I).

## PURPOSE OF THE CONSPIRACY

17.	The purpose of the conspiracy was for **ECT**, **DEL VALLE**, and their co-conspirators, known and unknown to the Grand Jury, to unlawfully enrich themselves by employing aliens who were not authorized to work in the United States. To further that purpose, **ECT**, **DEL VALLE**, and their co-conspirators, known and unknown to the Grand Jury concealed, harbored, and shielded aliens who worked at **ECT** from detection by law enforcement.

## MANNER AND MEANS OF THE CONSPIRACY

18.	The manner and means by which the **ECT**, **DEL VALLE**, and their co-conspirators, known and unknown to the Grand Jury, sought to accomplish the purpose and object of the conspiracy included, among other things, the following:

19.	**ECT**, **DEL VALLE**, and their co-conspirators, known and unknown to the Grand Jury, employed aliens to work at **ECT** from in or about June 2018 through on or about August 6,

2021. **ECT**, DEL VALLE, and their co-conspirators, known and unknown to the Grand Jury, knew or recklessly disregarded the fact that many of the aliens they employed had entered and remained in the United States unlawfully, and were not authorized to work in the United States.

20. In or about June 2018, the defendant, **ECT**, DEL VALLE, and their co-conspirators, known and unknown to the Grand Jury, devised a scheme to "transfer" the aliens employed by **ECT** who were not authorized to work in the United States to Hollys Services, which was to be established by DEL VALLE, so that they no longer appeared on **ECT's** payroll. The purpose of the scheme was to conceal, harbor, and shield the aliens who worked at **ECT** from HSI's audit.

21. DEL VALLE also agreed to recruit and hire additional aliens to work for **ECT**, who were not authorized to work in the United States, under the guise of Hollys Services and Quality Control.

22. In or about June 2018, several of the aliens employed by **ECT** were transferred from **ECT's** payroll to Hollys Services payroll to conceal, harbor, and shield their true identities from HSI's audit.

23. **ECT** continued to control and direct, among other things: (1) how the work was performed by the employees who worked for **ECT** under the guise of Hollys Services and Quality Control; (2) where the work was performed by the employees who worked for **ECT** under the guise of Hollys Services and Quality Control; and (3) the hours in which the work was performed by the employees who worked for **ECT** under the guise of Hollys Services and Quality Control.

24. DEL VALLE provided L.T. and/or B.G. with the hours worked and hourly rate for the employees who purportedly worked for Hollys Services and Quality Control on a weekly basis.

L.T. directed DEL VALLE to identify the employees who purportedly worked for Hollys Services and Quality Control by codes related to their position.

25. Only the employees who purportedly worked for Hollys Services and Quality Control were identified by codes. The employees who remained on **ECT's** payroll, that is the employees who were legally authorized to work in the United States, were identified by their actual names.

26. L.T. and/or B.G. directed or caused electronic transfers to be sent from **ECT's** bank account at TD Bank to various bank accounts **DEL VALLE** set up at SunTrust, TD Bank, and Bank of America, on a weekly basis, to cover the payroll expenses for the aliens who worked for **ECT** but were purportedly employed by Hollys Services and Quality Control.

27. After the electronic transfers were completed, DEL VALLE paid the aliens who worked for **ECT** but were purportedly employed by Hollys Services and Quality Control via check and with cash, oftentimes at **ECT's** headquarters in Saint Lucie County, Florida.

## OVERT ACTS

28. In furtherance of the conspiracy and to effect the objects thereof, one or more of the conspirators committed and caused to be committed at least one of the following overt acts, among others, in the Southern District of Florida:

29. In or about June 2018, DEL VALLE, C.M., and L.T., met at **ECT** and agreed to "transfer" the aliens employed by **ECT** to Hollys Services so that they no longer appeared on **ECT's** payroll. C.M. agreed to pay DEL VALLE a fee for each alien on Hollys Services' payroll that worked at **ECT**.

30. On or about June 8, 2018, DEL VALLE formed Hollys Services for the purpose of concealing, harboring, and shielding the aliens employed by **ECT** from HSI's audit.

31. On or about June 8, 2018, DEL VALLE opened an account at SunTrust Bank in Saint Lucie County, Florida, in the name of Hollys Services.

32. On or about June 18, 2018, **ECT** entered into a "General Service Agreement" with Hollys Services, whereby Hollys Services agreed to provide **ECT** with, among other things, "labor services."

33. The "General Service Agreement" was signed by C.M., on behalf of **ECT**, and DEL VALLE, on behalf of Hollys Services.

34. The "General Service Agreement" was an artifice designed by C.M. and DEL VALLE to conceal, harbor, and shield aliens who worked at **ECT** from detection by law enforcement.

35. On or about June 18, 2018, several of the employees HSI had identified as aliens not authorized to work in the United States were transferred from **ECT's** payroll to Hollys Services' payroll. These aliens continued to work for **ECT** while purportedly being employed and paid by Hollys Services.

36. On or about August 29, 2019, **ECT** entered into a "Employment Contract Agreement" with Quality Control, whereby Quality Control agreed to provide **ECT** with "LABOR" services.

37. The "Employment Contract Agreement" was signed by C.M., on behalf of **ECT**, and DEL VALLE, on behalf of Quality Control.

38. The "Employment Contract Agreement" was an artifice designed by C.M. and DEL VALLE to conceal, harbor, and shield aliens who worked at **ECT** from detection by law enforcement.

39. On or about August 23, 2019, DEL VALLE opened an account at TD Bank in Saint Lucie County, Florida, in the name of Quality Control.

40. On or about May 27, 2021, DEL VALLE opened an account at Bank of America in Saint Lucie County, Florida, in the name of "HOLLYS".

41. Between on or about June 28, 2018, and on or about August 23, 2019, **ECT** transferred over $750,000 to the bank account DEL VALLE set up at SunTrust in the name of Hollys Services, in 62 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at **ECT**.

42. Between August 30, 2019 and May 28, 2021, **ECT** transferred over $2,200,000 to the bank account DEL VALLE set up at TD Bank in the name of Quality Control, in 92 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at **ECT**.

43. Between June 4, 2021 and July 30, 2021, **ECT** transferred over $400,000 to the bank account DEL VALLE set up at Bank of America in the name of Hollys, in 9 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at **ECT**.

44. L.T. and B.G. directed or caused the electronic transfers to be sent from **ECT's** bank account at TD Bank to the bank accounts DEL VALLE set up at SunTrust, TD Bank, and Bank of America, on the following dates and in the following amounts:

| Date of Electronic Transfer | Amount of Electronic Transfer |
|---|---|
| 06/28/18 | $14,295.77 |
| 07/05/18 | $13,588.05 |
| 07/13/18 | $13,338.30 |
| 07/20/18 | $13,326.79 |
| 07/27/18 | $13,634.78 |
| 08/03/18 | $12,784.74 |

| Date | Amount |
|---|---|
| 08/10/18 | $13,296.26 |
| 08/17/18 | $12,743.62 |
| 08/24/18 | $11,409.61 |
| 08/31/18 | $10,424.50 |
| 09/07/18 | $10,749.59 |
| 09/14/18 | $9,879.40 |
| 09/21/18 | $11,281.89 |
| 09/28/18 | $11,571.06 |
| 10/05/18 | $13,927.44 |
| 10/12/18 | $11,568.46 |
| 10/19/18 | $13,172.97 |
| 10/26/18 | $13,851.55 |
| 11/02/18 | $14,563.88 |
| 11/09/18 | $14,809.60 |
| 11/16/18 | $14,252.30 |
| 11/23/18 | $12,955.11 |
| 11/30/18 | $13,011.39 |
| 12/07/18 | $14,680.51 |
| 12/14/18 | $12,963.03 |
| 12/21/18 | $12,025.56 |
| 12/28/18 | $10,864.14 |
| 01/04/19 | $9,321.14 |
| 01/11/19 | $11,389.96 |
| 01/18/19 | $11,820.47 |
| 01/25/19 | $13,011.17 |
| 02/01/19 | $11,194.34 |
| 02/08/19 | $11,033.42 |
| 02/15/19 | $13,038.59 |
| 02/22/19 | $5,895.59 |
| 03/01/19 | $11,064.77 |
| 03/08/19 | $10,211.44 |
| 03/15/19 | $8,578.60 |
| 03/22/19 | $8,555.49 |
| 03/29/19 | $8,688.10 |
| 04/05/19 | $8,912.22 |
| 04/12/19 | $9,336.98 |
| 04/19/19 | $10,353.69 |
| 04/26/19 | $9,905.45 |
| 05/03/19 | $9,975.28 |
| 05/10/19 | $10,198.67 |
| 05/17/19 | $11,343.50 |
| 05/24/19 | $11,970.56 |
| 05/31/19 | $13,226.11 |
| 06/07/19 | $14,978.95 |
| 06/14/19 | $14,463.83 |

| Date | Amount |
|---|---|
| 06/21/19 | $16,315.37 |
| 06/28/19 | $15,971.32 |
| 07/05/19 | $15,643.97 |
| 07/12/19 | $14,349.94 |
| 07/19/19 | $14,356.88 |
| 07/26/19 | $14,751.25 |
| 08/02/19 | $16,381.83 |
| 08/09/19 | $12,964.22 |
| 08/16/19 | $15,689.61 |
| 08/23/19 | $16,810.02 |
| 08/30/19 | $17,114.35 |
| 09/06/19 | $13,000.36 |
| 09/13/19 | $16,701.88 |
| 09/20/19 | $16,829.51 |
| 09/27/19 | $17,418.08 |
| 10/04/19 | $20,115.18 |
| 10/11/19 | $18,297.52 |
| 10/18/19 | $18,126.77 |
| 10/25/19 | $17,842.09 |
| 11/01/19 | $16,869.09 |
| 11/08/19 | $17,956.20 |
| 11/15/19 | $17,613.99 |
| 11/22/19 | $18,467.78 |
| 11/29/19 | $15,098.53 |
| 12/06/19 | $18,382.20 |
| 12/13/19 | $18,350.27 |
| 12/20/19 | $18,341.20 |
| 12/27/19 | $16,176.52 |
| 01/03/20 | $14,601.30 |
| 01/10/20 | $17,069.46 |
| 01/17/20 | $19,952.48 |
| 01/24/20 | $19,270.88 |
| 01/31/20 | $21,242.69 |
| 02/07/20 | $19,661.51 |
| 02/14/20 | $19,456.12 |
| 02/21/20 | $18,566.54 |
| 02/28/20 | $18,982.41 |
| 03/06/20 | $21,949.60 |
| 03/13/20 | $18,244.67 |
| 03/20/20 | $17,625.02 |
| 03/27/20 | $17,154.50 |
| 04/03/20 | $15,673.50 |
| 04/10/20 | $15,756.06 |
| 04/17/20 | $15,003.37 |
| 04/24/20 | $15,024.76 |

| Date | Amount |
|---|---|
| 05/01/20 | $16,028.06 |
| 05/08/20 | $16,695.54 |
| 05/15/20 | $19,502.39 |
| 05/22/20 | $22,230.72 |
| 05/29/20 | $23,458.47 |
| 06/05/20 | $23,195.96 |
| 06/12/20 | $23,244.67 |
| 06/19/20 | $23,758.17 |
| 06/26/20 | $20,306.17 |
| 07/03/20 | $23,990.66 |
| 07/10/20 | $22,594.53 |
| 07/17/20 | $23,966.51 |
| 07/24/20 | $23,657.09 |
| 07/31/20 | $22,714.66 |
| 08/07/20 | $20,951.29 |
| 08/14/20 | $22,330.18 |
| 08/21/20 | $21,478.03 |
| 08/28/20 | $22,390.23 |
| 09/04/20 | $21,520.51 |
| 09/11/20 | $20,822.14 |
| 09/18/20 | $22,983.48 |
| 09/25/20 | $23,044.79 |
| 10/02/20 | $22,810.81 |
| 10/09/20 | $21,251.94 |
| 10/16/20 | $24,104.14 |
| 10/23/20 | $26,935.79 |
| 10/30/20 | $29,185.04 |
| 11/06/20 | $28,145.21 |
| 11/13/20 | $24,993.18 |
| 11/20/20 | $27,396.29 |
| 11/27/20 | $25,512.18 |
| 12/04/20 | $25,114.20 |
| 12/11/20 | $30,500.09 |
| 12/18/20 | $29,835.69 |
| 12/24/20 | $27,197.90 |
| 12/31/20 | $27,963.47 |
| 01/08/21 | $28,158.61 |
| 01/15/21 | $34,714.39 |
| 01/22/21 | $35,835.25 |
| 01/29/21 | $34,122.34 |
| 02/05/21 | $35,664.40 |
| 02/12/21 | $32,813.65 |
| 02/19/21 | $33,777.96 |
| 02/26/21 | $35,258.33 |
| 03/05/21 | $36,623.59 |

| | |
|---|---|
| 03/12/21 | $38,318.41 |
| 03/19/21 | $35,813.74 |
| 03/26/21 | $37,846.61 |
| 04/02/21 | $36,073.25 |
| 04/09/21 | $37,481.83 |
| 04/16/21 | $38,921.31 |
| 04/23/21 | $38,827.96 |
| 04/30/21 | $43,833.03 |
| 05/07/21 | $40,950.30 |
| 05/14/21 | $36,616.01 |
| 05/21/21 | $42,243.85 |
| 05/28/21 | $41,142.36 |
| 06/04/21 | $39,329.41 |
| 06/11/21 | $39,932.06 |
| 06/18/21 | $40,492.16 |
| 06/25/21 | $43,330.67 |
| 07/02/21 | $49,566.46 |
| 07/09/21 | $43,448.12 |
| 07/16/21 | $47,220.55 |
| 07/23/21 | $51,741.41 |
| 07/30/21 | $50,421.36 |

45. On August 6, 2021, HSI and IRS executed a search warrant at **ECT's** headquarters in Saint Lucie County. Law enforcement encountered 58 employees when they executed the search warrant at **ECT's** headquarters. Of the 58 employees encountered at **ECT's** headquarters, 28 of them were aliens who were not authorized to work in the United States, and several of them were included in the list of unauthorized workers HSI provided to ECT in May 2018.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i).

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of certain property in which the defendant, **ECT,** has an interest.

2.      Upon conviction of the offense alleged in Count One of this Information, the defendant, **ECT,** shall forfeit to the United States, pursuant to Title 8, United States Code, Section 1324(b), any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of such violation, the gross proceeds of such violation, and any property traceable to such conveyance or proceeds.

3.      Upon conviction of the offense alleged in Count One of this Information, the defendant, **ECT,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6)(A), any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense; any property real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; or any property real or personal that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

4.      If any of the property described above, as a result of any act or omission of the defendants:

(1)     cannot be located upon the exercise of due diligence;

(2)     has been transferred or sold to, or deposited with a third party;

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
MICHAEL D. PORTER
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

MARTINEZ BUILDERS SUPPLY, LLC, d/b/a EAST COAST TRUSS, a Florida limited liability company,
_____/

CASE NO.: 24-CR-14035-CANNON/MAYNARD

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) No
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☐ Miami    ☐ Key West    ☒ FTP
☐ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take 5 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                  (Check only one)
   I   ☒ 0 to 5 days                 ☐ Petty
   II  ☐ 6 to 10 days                ☐ Minor
   III ☐ 11 to 20 days               ☐ Misdemeanor
   IV  ☐ 21 to 60 days               ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Cannon   Case No. 24-CR-14019-CANNON/MAYNARD

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Michael D. Porter
Assistant United States Attorney
FL Bar No.    0031149

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>MARTINEZ BUILDERS SUPPLY, LLC, d/b/a EAST COAST TRUSS</u>

**Case No**: <u>24-CR-14035-CANNON/MAYNARD</u>

Count #: 1

<u>Conspiracy to Conceal or Harbor Aliens, 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I)</u>

* **Max. Term of Imprisonment:** N/A
* **Max. Term of Probation:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** N/A
* **Max. Fine:**  The greatest of $500,000 or twice the gross loss or twice the gross gain caused by the offense; $400 Special Assessment

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.