UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-14035-CANNON/MAYNARD

UNITED STATES OF AMERICA

v.

MARTINEZ BUILDERS SUPPLY, LLC,
d/b/a EAST COAST TRUSS, a Florida
limited liability company,

                              **Defendant.**

_____/

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE
PRESENTENCE INVESTIGATION REPORT**

      The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds to the Objections to the Presentence Investigation Report submitted by the defendant, Martinez Builders Supply, LLC, d/b/a East Coast Truss, a Florida limited liability company ("ECT").

      In summary, ECT takes issue with Paragraph 16 of the Presentence Investigation Report ("PSI"), which states that "Del Valle formed Hollys Services for the purpose of concealing, harboring, and shielding the aliens employed by ECT[.]" ECT claims Hollys Services was formed to "vet the backgrounds of potential employees to avoid hiring undocumented individuals." The United States submits the facts, as admitted to by ECT in the Stipulated Factual Basis that was filed in this case, conclusively establish that Hollys Services was formed for the purpose of concealing, harboring, and shielding aliens employed by ECT.

      ECT also objects to the imposition of a fine. The United States recognizes that the Court may impose a fine of up to $500,000 against ECT. The United States, however, is not seeking a

1

fine. The United States notes that ECT has already satisfied a $450,000 forfeiture money judgment in this case. The United States believes the $450,000 forfeiture money judgment, felony conviction, public admonishment, and forthcoming probationary sentence are sufficient to satisfy the Section 3553(a) factors and deter future misconduct by ECT and other unscrupulous employers who may seek to employ illegal aliens. ECT does not have a history of misconduct, and this appears to be the first time ECT or any of its principals knowingly engaged in criminal conduct. ECT consented to the filing of an Information in this case, and pleaded guilty as charged at the first available opportunity. Finally, undersigned counsel has spoken with corporate counsel for ECT on multiple occasions, and believes ECT has implemented an effective compliance plan to ensure that it fully complies with federal immigration law in the future.

## BACKGROUND

On August 1, 2024, the United States filed an Information charging ECT with conspiring to harbor aliens by means of employment, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I) [ECF No. 1].

On October 28, 2024, ECT pleaded guilty as charged, pursuant to a written plea agreement and stipulated factual basis [ECF Nos. 16-17].[1] ECT also agreed to a forfeiture money judgment in the amount of $450,000. The parties recognized in the plea agreement that the Court could impose a fine up to the greatest of $500,000 or twice the gross loss or twice the gross gain caused by the offense [Plea Agreement at ¶ 3]. *The parties also agreed that forfeiture was "independent*

---

[1] Kelly Yanira Del Valle ("Del Valle") was charged in a related case with, among other things, conspiring to harbor aliens by means of employment, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I). Del Valle also pleaded guilty to the conspiracy charge. Del Valle was sentenced to 13 months' imprisonment, followed by three years of supervised, and ordered to forfeit $100,000. *See United States v. Kelly Yanira Del Valle*, 24-cr-14019-CANNON/MAYNARD (S.D. Fla.).

2

*of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court* [Plea Agreement at ¶ 7].  ECT satisfied the forfeiture money judgment at the change of plea hearing.

ECT's sentencing hearing is scheduled for January 23, 2025.  According to the PSI, ECT has a Total Offense Level of 18, Base Fine Calculation of $600,000, and Total Culpability Score of Eight [PSI at ¶¶ 64, 65, 73].  The statutory maximum fine that can be imposed is $500,000. *See* 18 U.S.C. § 3571(c)(3).  Thus, the effective fine range is $500,000 [PSI at ¶ 75].  The sentencing guideline range is one to five years of probation [PSI at ¶ 79].

On January 10, 2025, ECT filed its Objections to the Presentence Investigation Report, in which ECT takes issue with Paragraph 16 of the PSI, which states that "Del Valle formed Hollys Services for the purpose of concealing, harboring, and shielding the aliens employed by ECT" [ECF No. 28.]  ECT also objects to the imposition of a fine.

## ANALYSIS

**A.    Hollys Services was formed for the purpose of concealing, harboring, and shielding aliens employed by ECT.**

The parties stipulated to the following facts when ECT entered its guilty plea:

### *Undisputed Facts*

ECT is a Florida limited liability company that was formed in 2010.  At all times relevant to the indictment, ECT was engaged in the business of designing and constructing wood trusses for residential and commercial buildings.  ECT was headquartered in Fort Pierce, Florida, and employed over one hundred workers, many of whom were manual laborers [PSI at ¶ 7; Stipulated Factual Basis at pg. 2].

C.M. was and still is the president and managing member of ECT.  B.G. was an office manager at ECT from in or about December 2020, through on or about August 6, 2021.  B.G. is

3

still employed by ECT.  L.T. was an officer manager at ECT until in or about December 2020, when she retired [PSI at ¶ 8; Stipulated Factual Basis at pg. 2].

Del Valle was employed by ECT until in or about October 2019.  Del Valle held various positions during the time she was employed by ECT [PSI at ¶ 9].

On or about March 12, 2018, Homeland Security Investigations ("HSI") served ECT with a Notice of Inspection.  A Notice of Inspection is the procedure by which HSI initiates an audit of a business' employment records.  HSI requested ECT to produce Form I-9s for all of its employees.  Form I-9 is used for verifying the identity and employment authorization of individuals hired for employment in the United States.  All United States employers must ensure proper completion of Form I-9 for each individual they hire for employment in the United States [PSI at ¶ 12; Stipulated Factual Basis at pg. 2].

On or about March 16, 2018, ECT, through its agents acting within the scope of their employment, including L.T., provided HSI with Form I-9s for approximately 150 employees in response to the Notice of Inspection [PSI at ¶ 13; Stipulated Factual Basis at pg. 3].

On or about May 25, 2018, based on a review of the Form I-9s that ECT provided, HSI identified 43 ECT employees who appeared to be aliens not authorized to work in the United States.  HSI provided ECT with a list of the 43 employees, and warned ECT it could be subject to criminal charges if it continued to employ aliens who were not authorized to work in the United States.  C.M., L.T., and B.G. were all aware of the results of HSI's audit [PSI at ¶ 14; Stipulated Factual Basis at pg. 3].

*In or about June 2018, Del Valle, C.M., and L.T. met at ECT and agreed to "transfer" the aliens employed by ECT who were not authorized to work in the United States to Hollys Services LLC ("Hollys Services"), a Florida limited liability company established by Del Valle, so that they*

4

*no longer appeared on ECT's payroll* [PSI at ¶ 15; Stipulated Factual Basis at pg. 3].   *The idea to "transfer" the aliens employed by ECT who were not authorized to work in the United States to Hollys Services originated with Del Valle.*

*The purpose of the scheme was to conceal, harbor, and shield the aliens who worked at ECT from HSI's audit.   Del Valle also agreed to recruit and hire additional aliens to work for ECT, who were not authorized to work in the United States, under the guise of Hollys Services, and later Quality Control* [PSI at ¶ 15; Stipulated Factual Basis at pg. 3]**.**

*On or about June 8, 2018, Del Valle formed Hollys Services for the purpose of concealing, harboring, and shielding the aliens employed by ECT from HSI's audit* [PSI at ¶ 16; PSI at ¶ 20; Stipulated Factual Basis at pg. 3].   Del Valle also used Hollys Services as a tax return preparation business.   Del Valle operated Hollys Services out of her residence in Saint Lucie County, Florida [PSI at ¶ 10].

On or about June 8, 2018, Del Valle opened an account at SunTrust Bank in Saint Lucie County, Florida, in the name of Hollys Services [PSI at ¶ 17; Stipulated Factual Basis at pg. 3].

On or about June 15, 2018, ECT falsely notified HSI that 36 of the 43 ECT employees identified by HSI had been terminated.   ECT provided verification that 4 of the ECT employees identified by HSI were lawfully permitted to work in the United States [PSI at ¶ 18; Stipulated Factual Basis at pg. 3].

On or about June 18, 2018, ECT entered into a "General Service Agreement" with Hollys Services, whereby Hollys Services agreed to provide ECT with, among other things, "labor services."   The "General Service Agreement" was signed by C.M., on behalf of ECT, and Del Valle, on behalf of Hollys Services.   The "General Service Agreement" was an artifice designed

by C.M. and Del Valle to conceal, harbor, and shield aliens who worked at ECT from detection by law enforcement [PSI at ¶ 19; Stipulated Factual Basis at pg. 4].

On or about June 18, 2018, several of the employees HSI had identified as aliens not authorized to work in the United States were transferred from ECT's payroll to Hollys Services' payroll to conceal, harbor, and shield their true identities from HSI's audit. These aliens continued to work for ECT while purportedly being employed and paid by Hollys Services [PSI at ¶ 20; Stipulated Factual Basis at pg. 3].

On or about August 23, 2019, Del Valle opened an account at TD Bank in Saint Lucie County, Florida, in the name of Quality Control [PSI at ¶ 25; Stipulated Factual Basis at pg. 5]. Quality Control was a fictitious name created by Del Valle. Quality Control was created by Del Valle for the same purpose as Hollys Services, that is, to conceal, harbor, and shield aliens who worked at ECT from detection by law enforcement. Del Valle operated Quality Control out of her residence in Saint Lucie County, Florida [PSI at ¶ 11].

On or about August 29, 2019, ECT entered into a "Employment Contract Agreement" with Quality Control, whereby Quality Control agreed to provide ECT with "LABOR" services. The "Employment Contract Agreement" was signed by C.M., on behalf of ECT, and Del Valle, on behalf of Quality Control. The "Employment Contract Agreement" was an artifice designed by C.M. and Del Valle to conceal, harbor, and shield aliens who worked at ECT from detection by law enforcement [PSI at ¶ 21; Stipulated Factual Basis at pg. 4].

ECT continued to control and direct, among other things: (1) how the work was performed by the employees who worked for ECT under the guise of Hollys Services and Quality Control; (2) where the work was performed by the employees who worked for ECT under the guise of Hollys Services and Quality Control; and (3) the hours in which the work was performed by the

employees who worked for ECT under the guise of Hollys Services and Quality Control [PSI at ¶ 22; Stipulated Factual Basis at pg. 4].

Del Valle provided L.T. and/or B.G. with the hours worked and hourly rate for the employees who purportedly worked for Hollys Services and Quality Control on a weekly basis. L.T. directed Del Valle to identify the employees who purportedly worked for Hollys Services and Quality Control by codes related to their position [PSI at ¶ 23; Stipulated Factual Basis at pgs. 4-5].

Only the employees who purportedly worked for Hollys Services and Quality Control were identified by codes. The employees who remained on ECT's payroll, that is the employees who were legally authorized to work in the United States, were identified by their actual names [PSI at ¶ 24; Stipulated Factual Basis at pg. 5].

On or about May 27, 2021, Del Valle opened an account at Bank of America in Saint Lucie County, Florida, in the name of "HOLLYS" [PSI at ¶ 26; Stipulated Factual Basis at pg. 5].

Between on or about June 28, 2018, and on or about August 23, 2019, ECT, through its agents acting within the scope of their employment, transferred over $750,000 to the bank account Del Valle set up at SunTrust in the name of Hollys Services, in 62 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at ECT [PSI at ¶ 27; Stipulated Factual Basis at pg. 5].

Between August 30, 2019 and May 28, 2021, ECT, through its agents acting within the scope of their employment, transferred over $2,200,000 to the bank account Del Valle set up at TD Bank in the name of Quality Control, in 92 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at ECT [PSI at ¶ 28; Stipulated Factual Basis at pg. 5].

Between June 4, 2021 and July 30, 2021, ECT, through its agents acting within the scope of their employment, transferred over $400,000 to the bank account Del Valle set up at Bank of America in the name of Hollys, in 9 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at ECT [PSI at ¶ 29; Stipulated Factual Basis at pg. 5].

ECT, through its employees, directed or caused the electronic transfers to be sent from ECT's bank account at TD Bank to the bank accounts Del Valle set up at SunTrust, TD Bank, and Bank of America on a weekly basis, to cover the payroll expenses for the aliens who worked for ECT but were purportedly employed by Hollys Services and Quality Control [PSI at ¶ 30; Stipulated Factual Basis at pgs. 5-6].

After the electronic transfers were completed, Del Valle paid the aliens who worked for ECT but were purportedly employed by Hollys Services and Quality Control via check and with cash, oftentimes at ECT's headquarters in Saint Lucie County, Florida [PSI at ¶ 31].

Between October 2020 and July 2021, law enforcement conducted surveillance on Del Valle.  On multiple occasions during this time frame, law enforcement observed Del Valle withdraw large amounts of cash from TD Bank in Fort Pierce, and Bank of America in Fort Pierce, after which she drove to ECT.  On several of those occasions, law enforcement observed Del Valle hand large envelopes of cash to N.G.F. in ECT's parking lot.  N.G.F. was one of the ECT employees HSI identified in May 2018 as someone who was not authorized to work in the United States.  ECT falsely told HSI in June 2018 that N.G.F. had been terminated, when in fact N.G.F. continued to work for ECT under the guise of Hollys Services, and later Quality Control [PSI at ¶ 32].

On August 6, 2021, law enforcement executed a search warrant at ECT's headquarters in Saint Lucie County. Law enforcement encountered 58 employees when they executed the search warrant at ECT's headquarters. Of the 58 employees encountered at ECT's headquarters, 28 of them were aliens who were not authorized to work in the United States, and several of them were included in the list of unauthorized workers HSI provided to ECT in May 2018 [PSI at ¶ 33; Stipulated Factual Basis at pg. 6].

Based on the foregoing, the United States submits there is ample evidence in the record upon which to conclude that Hollys Services was formed for the purpose of concealing, harboring, and shielding aliens employed by ECT.[2]

**B.  The United States is not seeking a fine in this case.**

The United States recognizes that the Court may impose a fine of up to $500,000 against ECT [PSI at ¶ 80; *see also* 18 U.S.C. § 3571(c)(3)]. The United States, however, is not seeking a fine against ECT. The United States notes that ECT has already satisfied the $450,000 forfeiture money judgment in this case. The United States believes the $450,000 forfeiture money judgment, felony conviction, public admonishment, and forthcoming probationary sentence are sufficient to satisfy the Section 3553(a) factors and deter future misconduct by ECT and other unscrupulous employers who may seek to employ illegal aliens. ECT does not have a history of misconduct, and this appears to be the first time ECT or any of its principals knowingly engaged in criminal conduct. ECT consented to the filing of an Information in this case, and pleaded guilty as charged at the first available opportunity. The United States also recognizes that ECT employs

---

[2] The United States anticipates ECT will withdraw this objection. In the event ECT persists with this objection, the United States will be prepared to present evidence at sentencing establishing this fact.

9

over a hundred people in the Treasure Coast area. Finally, undersigned counsel has spoken with corporate counsel for ECT on multiple occasions, and believes ECT has implemented an effective compliance plan to ensure that it fully complies with federal immigration law in the future.

## CONCLUSION

Based on the foregoing, the United States respectfully requests the Court to overrule ECT's Objections to the Presentence Investigation Report.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: **/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney
Florida Bar# 0031149
101 South U.S. Highway 1
Suite 3100
Fort Pierce, Florida 34950
Telephone: (772) 293-0950
Email:michael.porter2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

**/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney